```
                    IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,      )    CR 17-00648 LEK
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
LEONARDO DELOS REYES PIZARRO,  )
                               )
          Defendant.           )
_____)
```

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**REGARDING EVIDENTIARY HEARING HELD ON JULY 12 AND 13, 2018**

This matter arises out of an indictment filed against Defendant Leonardo Delos Reyes Pizarro ("Defendant") on November 21, 2017. Defendant plead guilty, pursuant to a plea agreement, to one count on March 12, 2018. Defendant filed objections to the draft presentencing investigation report filed on May 10, 2018. As a result, an evidentiary hearing was held on July 12 and 13, 2018 regarding (1) the factual issue of whether the victim's testimony is credible as to Defendant knowingly using force and/or fear under 18 U.S.C. § 2241(a) and/or § 2242, and (2) whether the Government carried its burden of proof as to the factual issue.

The Court's findings of fact and conclusions of law are as follows:

1. At the evidentiary hearing, Plaintiff the United States of America ("the Government") called one witness, known by her initials as "D.Y." and who is the victim in the instant

offense, and Defendant called two witnesses, Juliana Stoaks ("Stoaks") and Francis Pelante ("Pelante").

2. All three witnesses testified truthfully and gave credible testimony.

3. Defendant and the three witnesses, as of October 27, 2017, were all employees of the Pride of America, which is a United States flagged vessel, and operates as a cruise ship.

4. Defendant and Pelante shared a cabin on the cruise ship in which there were two bunks.

5. Defendant's cabin had tight quarters with two bunks consisting of one bunk that has a single-sized bed mattress and the other which is a double bunk bed with a single-sized bed mattress on each level, and all of the bunks each have privacy curtains which can be drawn around the bunk. [Defendant's Ex. 5-6, 9-10, 12].

6. There is about 21 inches between the single and double bunk beds.

7. Pelante's bed was the single bunk, and Defendant's bed was the lower bed of the double bunk bed.

8. Earlier on October 27, 2017, the date of the offense, D.Y. and Defendant had made plans to meet in Defendant's cabin.

9. On October 27, 2017, D.Y. voluntarily entered Defendant's cabin.

10. Stoaks and Pelante were already in the cabin and in Pelante's bed with the curtains drawn across the bed when D.Y. entered Defendant's cabin.

11. D.Y. knew that Pelante and Stoaks were in Pelante's bed when she entered the cabin, believed that they were sleeping, and knew that Stoaks would need to wake up in order to report to work at 10:00 p.m.

12. D.Y. testified that Defendant closed the curtains around his bunk and slid her into his bed. He proceeded to kiss her and to pull at her clothing, and then to take off some of her clothing and repeatedly touched her breast and vagina.

13. D.Y. resisted and continuously told Defendant "no" and to stop but he did not.

14. D.Y. felt paralyzing fear because of Defendant's actions in kissing her, taking off her clothes and touching her breast and vagina after she resisted his touch and told him "no", inserting his fingers, mouth and then his penis in her vagina, and she continuously resisted, tried to squeeze her legs shut so that he could not access her vagina, and repeatedly stated that she wanted him to stop.

15. D.Y. was unable to get up off the bed and leave because Defendant held her thigh down and was on top of her using his body weight so that she could not get up.

16. D.Y. felt paralyzing fear when Defendant pulled her legs apart and inserted his penis into D.Y.'s vagina.

17. D.Y. heard Stoaks' alarm ring and heard noises that she interpreted as Stoaks waking up and getting ready for work.

18. Pelante and Stoaks were in Pelante's bed with the curtains drawn when they heard D.Y. enter the cabin, and they were not surprised that she came to the cabin and met Defendant.

19. After D.Y. entered the cabin and until Stoaks' alarm rang, neither Pelante nor Stoaks left Pelante's bed or opened the curtains drawn around Pelante's bed.

20. Pelante and Stoaks heard kissing and other sounds which they believed were consistent with sexual activity taking place in Defendant's bed, and they believed Defendant and D.Y. were having consensual sex.

21. If Pelante felt that something wrong was occurring, he would have left his bed and taken some kind of action to stop it because he was taught in the armed forces to do so.

22. After her alarm rang, Stoaks got up from Pelante's bed and walked past Defendant's bed but did not see anything because the curtains were drawn around it and went into the bathroom to get ready for work.

23. After Defendant withdrew his penis from D.Y.'s vagina, he released his hold on her thigh and was no longer pressing down on her with his body weight, and D.Y. got out of Defendant's bed and left the cabin.

24. Stoaks and Pelante never spoke to D.Y. nor saw her face-to-face during the time that D.Y. was in Defendant's cabin.

25. On October 29, 2017, two days after the offense occurred, D.Y. underwent a sexual assault medical examination and was observed to have two red marks on her chest area below her breasts. [Def.'s Ex. 3.]

26. D.Y. believes that the marks were caused by her bra being pressed down on her when Defendant was using his body weight to hold her down on October 27, 2017.

27. D.Y. did not notice the marks prior to the medical examination although she does look at her body every day.

28. On November 21, 2017, Defendant was indicted on five counts: Aggravated Sexual Abuse-Force, in violation of 18 U.S.C. § 2241(a)(1)(Count 1), Sexual Abuse-Fear, in violation of 18 U.S.C. § 2242(a)(1) (Count 2), Abusive Sexual Contact-Force, in violation of 18 U.S.C. § 2244(a)(1)(Count 3), Abusive Sexual Contact-Fear, in violation of 18 U.S.C. § 2244(a)(2)(Count 4), and Abusive Sexual Contact-Without Permission, in violation of 18 U.S.C. § 2244(b)(Count 5). [Dkt. no. 19.]

29. Defendant entered a plea of Not Guilty to all counts at his arraignment on November 21, 2017. [Dkt. no. 18.]

30. He withdrew his previous plea of not guilty and entered a plea of guilty to Abusive Sexual Contact-Without Permission, in violation of 18 U.S.C. § 2244(b)(Count 5) on March 12, 2019 (dkt. no. 54) and thus has admitted to committing

the offense of 18 U.S.C. § 2244(b)("Admitted Offense").

31. 18 U.S.C. § 2244(b) provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both.

18 U.S.C. § 2244.

32. The 2016 United States Sentencing Commission Guideline Manual for 2016 is appropriate to use to determine Defendant's offense level because the offense occurred on or after November 1, 2016. U.S.S.G. §1B1.11.

33. The appropriate guideline for the Admitted Offense is found at U.S.S.G. §2A3.4(a), which provides:

> §2A3.4. Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact
>
> (a) Base Offense Level:
>
> (1) **20**, if the offense involved conduct described in 18 U.S.C. § 2241(a) or (b);
>
> (2) **16**, if the offense involved conduct described in 18 U.S.C. § 2242; or
>
> (3) **12**, otherwise.

U.S.S.G. §2A3.4(a)(1-3)(original emphases).

34. Defendant's base offense level is 12, according to U.S.S.G. §2A3.4(a)(3), unless the Admitted Offense "involved conduct described in 18 U.S.C. § 2241(a) or (b)" and, in that

event, the base offense level would be 20. U.S.S.G. §2A3.4(a)(1). Alternatively, if the Admitted Offense "involved conduct described in 18 U.S.C. § 2242", then the base offense level would be 16. U.S.S.G. §2A3.4(a)(2). As explained in the background note to U.S.S.G. §2A3.4, these differing base offense levels take into account the different means used to commit the offense of Abusive Sexual Contact:

> Background: This sections covers abusive sexual contact not amounting to criminal sexual abuse (criminal sexual abuse is covered under §§2A3.1-3.3). **Alternative base offense levels are provided to take account of the different means used to commit the offense.**

Background Note, U.S.S.G. §2A3.4 (emphases added).

35. Thus, although the Admitted Offense is for Abusive Sexual Conduct, if Defendant, in committing this offense, used means which involve conduct constituting 18 U.S.C. § 2241 or § 2242, then his base offense level would be either 20 or 16, and not 12. U.S.S.G. §2A3.4(a)(1)-(3). This is made clear by Application Note 2 which states, in relevant part, as follows:

> Application of Subsection (a)(1). – for purpose of subsection (a)(1), "conduct described in 18 U.S.C. § 2241() or (b)" is engaging in, or causing sexual contact with, or by another person by: (A) using force against the victim . . . .

Application Note 2, U.S.S.G. §2A3.4. Likewise, Application Note 3 instructs in relevant part:

> Application of Subsection (a)(2).– For purposes of subsection (a)(2),

> "conduct described in 18 U.S.C. §
> 2242" is: (A) engaging in, or
> causing sexual contact with, or by
> another person by threatening or
> place the victim in fear (other
> than by threatening or placing in
> feat that any person will be
> subjected to death, serious bodily
> injury or kidnapping . . . .

Application Note 3, U.S.S.G. §2A3.4.

36. As the application notes elucidate, whether an alternative base offense level is applied depends on whether Defendant's conduct used means to commit the Admitted Offense which include elements of 18 U.S.C. § 2241 or § 2242. Therefore, the Court turns to each of these statutes.

37. 18 U.S.C. § 2241 provides:

> § 2241. Aggravated sexual abuse
>
> (a) By force or threat.--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly causes another person to engage in a sexual act–
>
> > (1) by using force against that other person; or
> >
> > (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;
>
> or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.
>
> (b) By other means.--Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or

>     agreement with the head of any Federal department or agency, knowingly–
>
> >     (1) renders another person unconscious and thereby engages in a sexual act with that other person; or
> >
> >     (2) administers to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby–
> >
> > >     (A) substantially impairs the ability of that other person to appraise or control conduct; and
> > >
> > >     (B) engages in a sexual act with that other person;
> >
> >     or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

18 U.S.C. § 2241(a)–(b).

38. There is no contention that the Admitted Offense involved conduct defined in 18 U.S.C. § 2241(b) and therefore the Court finds that § 2241(b) is not applicable to the calculation of Defendant's sentencing guideline.

39. There is a question of whether D.Y.'s testimony that Defendant used force is credible and therefore the Court must resolve whether Defendant, in committing the Admitted Offense, used means which involved knowingly causing D.Y. to engage in a sexual act by using force against her. See 18 U.S.C. § 2241(a)(1). This determination will decide whether or not Defendant's base offense level is 20. U.S.S.G. §2A3.4(a)(1).

40. 18 U.S.C. § 2242 provides:

> § 2242. Sexual abuse
>
> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly--
>
> (1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or
>
> (2) engages in a sexual act with another person if that other person is--
>
>> (A) incapable of appraising the nature of the conduct; or
>>
>> (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
>
> or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

18 U.S.C. § 2242.

41. There is a question of whether D.Y.'s testimony that Defendant placed her in fear or used force is credible. Therefore the Court must resolve whether Defendant caused D.Y. "to engage in a sexual act by . . . placing [her] in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)." 18 U.S.C. § 2242(1).

42. The "fear" required to be shown for purposes of 18 U.S.C. § 2242(1) has been expressed as:

> A reasonable construction of section 2242(1) is that it encompasses all fears of harm to oneself or another other than death, serious bodily injury or kidnapping. A person of ordinary intelligence would understand the kind of fear the statute prohibits is fear of harm to self or others.

United States v. Gavin, 959 F.2d 788, 791 (9th Cir. 1992), as amended (Mar. 16, 1992).

43. In addition, the Court must determine if the cross reference contained in U.S.S.G. §2A3.4(c)(1) applies in determining Defendant's offense level.

44. U.S.S.G. §2A3.4(c)(1) provides:

> (c) Cross References
>
> (1) If the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242), apply §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse).

U.S.S.G. §2A3.4(c)(1). This cross-reference refers to "criminal sexual abuse" but neither of the referenced statutes define it:

> Neither Section 2241 or 2242 defines "criminal sexual abuse." Section 2241 is entitled "aggravated sexual abuse" and 2242 is "sexual abuse". Both of these sections speak to "sexual acts" and the use of force or threat or placing a person in fear. "Sexual act" is defined differently than "sexual contact" in the applicable definitions. 18 USC § 2246.

United States v. Smith, No. 2:16-CR-011-JLQ, 2016 WL 4051280, at

*1 (E.D. Wash. July 25, 2016).

45. The Court must make a fact-based determination whether to apply the cross-reference:

> The decision to apply a guideline cross-referenced within another guideline is fact-dependent. United States v. Myers, 112 F.3d 406, 409 (9th Cir.1997). The cross-reference contained in U.S.S.G. § 2A3.4(c)(1) instructs the court to apply guideline § 2A3.1 "[i]f the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242)". Thus, the fact-dependent inquiry focuses on determining whether the acts Morgan committed constitute "criminal sexual abuse" as proscribed by either 18 U.S.C. § 2241 or § 2242.

United States v. Morgan, 164 F.3d 1235, 1238 (9th Cir. 1999).

46. If the cross-reference does apply, then the base offense level of 30 contained in U.S.S.G. §2A3.1 should be applied:

> The Guidelines for the offense of Abusive Sexual Conduct provide that if the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse, § 2A3.1 should be applied. See U.S.S.G. § 2A3.4(c)(1). Under § 2A3.1(b)(3), if the victim was in the "custody, care, or supervisory control of the defendant," a two-level increase shall be applied to the base offense level of 30.

United States v. Swank, 676 F.3d 919, 922 (9th Cir. 2012).

47. Thus the Court must make the following factual determinations: (1) did Defendant commit "sexual acts" or "sexual contact"; (2) did Defendant place D.Y. in fear; and (3) did Defendant use force.

48.     Relevant here, the definition of "sexual act" includes "contact between the penis and the vulva . . ." or "contact between the mouth and the vulva, . . . ."  18 U.S.C. § 2246(2)(A)-(B).  Also, "the term 'sexual contact' mean the intentional touching, either directly or thought the clothing, of the genitalia, . . . breast, . . . of any person with the intent to . . . gratify the sexual desire of any person [.]" 18 U.S.C. § 2246(3).

49.     Before analyzing the testimonies submitted at the evidentiary hearing, the Court must first determine the proper standard of proof to apply.  The Ninth Circuit Court of Appeals instructs, as to when the higher standard of proof is applicable, that:

> District courts generally use the "preponderance of the evidence standard of proof when finding facts at sentencing, such as the amount of loss caused by a fraud." United States v. Treadwell, 593 F.3d 990, 1000 (9th Cir.2010). The higher clear and convincing standard may apply, however, "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." United States v. Mezas de Jesus, 217 F.3d 638, 642 (9th Cir.2000) (citing United States v. Restrepo, 946 F.2d 654, 659 (9th Cir.1991) (en banc)); see also Treadwell, 593 F.3d at 1000. Particularly "where a severe sentencing enhancement is imposed on the basis of uncharged or acquitted conduct, due process may require clear and convincing evidence of that conduct." Treadwell, 593 F.3d at 1000.

United States v. Hymas, 780 F.3d 1285, 1289 (9th Cir. 2015).

50.     Defendant faces severe sentencing enhancements in

the event that the Court finds U.S.S.G. §2A3.4(a)(1) or (2), or §2A3.4(c)(1) applicable. Specifically, if U.S.S.G. §2A3.4(a)(1) applies, then his base offense level would be increased from 12 to 20. If U.S.S.G. §2A3.4(a)(2) applies, then his base offense level increases from 12 to 16. If U.S.S.G. §2A3.4(c)(1) applies, then his base offense level would be calculated at 30.

51. In light of the possible severe sentencing enhancements, the clear and convincing evidence (and not the preponderance of the evidence) standard applies. Moreover, the conduct being examined for the severe sentencing enhancement is part of four sexual abuse offenses which the Government has agreed to dismiss, after sentencing, pursuant to the plea agreement. The Court concludes that due process requires the Government to prove the conduct by clear and convincing evidence.

52. The Court finds and concludes that the following was proved by clear and convincing evidence:

    a. Defendant admitted to facts in the memorandum of plea agreement which meet the statutory definition of "sexual act". 18 U.S.C. § 2246(2)(A)-(B). Specifically, he admitted to having "performed oral sex on D.Y., . . . inserted his finger into D.Y.'s vagina, and . . . inserted his penis into D.Y.'s vagina." Memorandum of Plea Agreement, filed 03/12/18, at ¶8(c) (dkt. no. 56).

    b. D.Y.'s testimony was credible and consistent that Defendant placed her in paralyzing fear by committing sexual

acts on her when she was physically resisting him and telling him "no".

  c. D.Y.'s fear for herself was reasonable and, in light of her verbal refusals and struggles to resist Defendant, the evidence demonstrates that Defendant knew his commission of sexual acts upon D.Y. caused fear in her.

  d. D.Y.'s testimony was credible and consistent, and established that Defendant pushed down on her thigh, pried her legs open against her will, and pressed his body weight down on top of her in order to commit the sexual acts.

  e. In light of D.Y.'s testimony that she was stating "no" and physically resisting Defendant's commission of sexual acts upon her person, Defendant's actions – pushing down on her thigh, prying her legs open against her will, and pressing his body weight down on top of her – constitutes use of force.

  f. Soaks and Pelante both testified credibly but their conclusion that Defendant and D.Y. had engaged in consensual sex was based on their inability to see what was occurring and to see D.Y., and their mistaken belief that the sounds that they heard were from consensual sex and not from D.Y. resisting Defendant from committing sexual acts upon her person.

 53. D.Y.'s testimony was inconclusive, and thus the Government did not prove by clear and convincing evidence, that the two red marks located on her chest and below her bra line were caused by Defendant's use of force because, while she

believed that these marks were caused by the pressure of Defendant's body weight pressed on top of her while she was wearing her bra, she also testified that she did not recall if these marks were present before she underwent the medical examination two days after Defendant sexually abused her.

54. The Court finds and concludes that:

    a. Defendant committed sexual acts, as defined by 18 U.S.C. § 2246(2)(A)-(B), upon D.Y.

    b. Defendant knowingly caused D.Y. to engage in sexual acts by using force against her, as set forth in 18 U.S.C. § 2241(a)(1).

    c. Defendant knowingly caused D.Y. to engage in a sexual act by placing her in fear.

    d. Defendant committed acts constituting "criminal sexual abuse" as proscribed by both 18 U.S.C. § 2241(a) and § 2242.

    e. The cross-reference contained in U.S.S.G. §2A3.4(c)(1) therefore applies to Defendant and his base offense level is calculated at 30.

    f. Because of the Court's findings that Defendant committed conduct described in 18 U.S.C. § 2241(a), U.S.S.G. §2A3.1(b)(1) applies and Defendant's base offense level is increased by 4 levels. See §2A3.1(b)(1)("If the offense involved conducted described in 18 U.S.C. § 2241(a) . . ., increase by **4** levels.")(original emphasis).

**IT IS SO ORDERED.**

DATED AT HONOLULU, HAWAII, July 20, 2018.



      /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

USA VS. LEONARDO DELOS REYES PIZARRO; CR 17-00648 LEK; FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING EVIDENTIARY HEARING HELD ON JULY 12 AND 13, 2018